NATIONAL LABOR RELATIONS BOARD
v. STANDARD STEEL SPRING CO.

No. 10956.

United States Court of Appeals
Sixth Circuit.

March 28, 1950.

Marcel Mallet-Prevost, Washington, D. C., for petitioner. David P. Findling, A. Norman Somers, Marcel Mallet-Prevost, and Margaret M. Farmer, Washington, D. C., on the brief.

W. D. Armour, Pittsburgh, Pa., for respondent Standard Steel Spring Co. Nicholas Unkovic, W. D. Armour, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief.

David E. Feller, Washington, D. C., for United Steel Workers of America, C.I.O., intervenor. Arthur J. Goldberg, Thomas E. Harris, Washington, D. C., on the brief.

Before SIMONS, McALLISTER, and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

This is a petition for enforcement of an order of the National Labor Relations Board. The order required The Standard Steel Spring Company to cease and desist from recognizing the United Steelworkers of America, C.I.O., as the exclusive representative of its powerhouse employees at its Newton Falls, Ohio, plant. It also required the company to refrain from giving effect to its contract with the Steelworkers, in so far as it affected such powerhouse employees, until the Steelworkers shall have been certified as the representative of such employees; and to desist from, in any like or related manner, interfering with the rights of its employees, as guaranteed by Section 7 of the National Labor Relations Act, 29 U.S.C.A. § 157. Affirmatively, the order required the company to withdraw all recognition from the Steelworkers as the representative of any of its powerhouse employees at the Newton Falls plant unless and until the Board shall have certified such organization as the representative of such employees. The order concluded with the usual requirement that the company post appropriate notices of the foregoing, and informing its employees that it was carrying out the above provisions.

The circumstances giving rise to the Board's order are as follows: The respondent company acquired the Newton Falls plant in May, 1946, and engaged contractors to remodel it. Prior to their acquisition by respondent, the premises had been occupied by the Timken Roller Bearing Company. At the time of the hearing in June, 1948, respondent company had employed about 350 permanent employees, of whom half had formerly been employed by the Timken Company. The Timken employees had been previously represented by the Steelworkers, C.I.O.; and the Steelworkers have, for a number of years, represented, with one exception, all of the production and maintenance employees, including the powerhouse employees, in all the other plants of respondent company in plant-wide units at such other plants.

For a long time before the present dispute arose, the Steelworkers, C.I.O., and the local A. F. of L. unions had an agreement in the area in which the Newton Falls plant is located, that the Steelworkers would not attempt to organize a new plant until the A. F. of L. craftsmen engaged in the construction work had left the premises, and the employer had hired production and maintenance employees and had commenced production. In turn, the A. F. of L. locals had agreed to give the C.I.O. a free hand in organizing the production and maintenance employees of such a manufacturing plant. In accordance with this agreement, the Steelworkers made no attempt to organize respondent company's employees until the latter part of July, 1947, after the A. F. of L. craftsmen had completed their work on the remodeling of the plant, and after respondent had hired permanent employees and was ready to start production.

However, while the new plant was under construction, during the first part of April, 1947, an A. F. of L. union from outside the community—the International Union of Operating Engineers—appeared upon the scene and proceeded to organize the nine powerhouse employees of respondent company. After these employees had designated the Engineers, A. F. of L., as their

representative, the Engineers demanded that respondent company grant it recognition as their exclusive bargaining representative. Respondent company informed the representative of the Engineers that it preferred a plant-wide bargaining unit, and that it had agreements with the Steelworkers in all of its other plants covering plant-wide units of production and maintenance employees. It further pointed out that it had not yet started production and had hired only a few permanent employees, and that, at that time, it was not yet possible to ascertain what type of union all of the employees would want. This discussion took place approximately four months before the reconstruction work on the plant had been completed, and about five months before most of the production and maintenance employees had been hired, and production commenced.

Upon receiving this reply from respondent company, the Engineers filed a representation petition with the National Labor Relations Board, requesting certification as exclusive bargaining representative for the nine powerhouse employees. On May 28, 1947, the Board held a hearing on the representation petition, in which the parties to the proceeding were the Engineers and respondent company. The Board then took under advisement the question of the appropriate unit, and the determination of representatives for the employees in such unit.

When respondent had practically completed the remodeling of the plant during the latter part of July, 1947, it hired its permanent production and maintenance employees, and began production. The Steelworkers, C.I.O., thereupon appeared in the plant, launched an organizing campaign, and shortly before August 8, 1947, claimed to represent a majority of the production and maintenance employees then in the plant, including the powerhouse employees. It, accordingly, demanded that respondent company grant the Steelworkers recognition as the exclusive bargaining representative of all the employees in a plant-wide unit.

Respondent company, however, required that the Steelworkers union first prove that it actually did represent a majority of the employees in the proposed unit. Consequently, in proof of its claim to majority representation, the Steelworkers union submitted 134 union cards, which were checked against respondent's pay roll of approximately 180 eligible employees in the proposed production and maintenance unit. Of the cards submitted, 123 were found to bear names appearing on the company's pay roll list, and ten were employees who had been hired subsequent to the making of the pay roll list used for checking purposes.

Prior to this date, all of the powerhouse employees who had formerly designated the Engineers as their representative, had accepted membership in the Steelworkers. Cards were submitted for all of these powerhouse employees, showing them to be members of the Steelworkers union. In addition, the powerhouse employees, on August 13, 1947, had executed an affidavit addressed to the National Labor Relations Board, at Washington, wherein they all stated, under oath, that they had originally signed cards in the Engineers union, but subsequently had all signed cards and accepted membership in the Steelworkers. All of the powerhouse employees thereupon requested the Board to dismiss the case involving the claimed representation of such employees by the Engineers, as well as the question of the appropriate unit to represent them. The Steelworkers union advised respondent company of the execution of this affidavit during the conference with respect to representation of respondent's employees by the Steelworkers. Moreover, Leslie Ackerman, a powerhouse employee, and, at one time, the leader in the Engineers, A. F. of L., union, had become president of the Steelworkers union, and was a member of the committee at that time negotiating for the Steelworkers, and advised respondent company that the powerhouse employees desired the Steelworkers union as their collective bargaining representative.

Under these circumstances, the respondent company recognized the Steelworkers union, and entered into collective bargaining with it; and an agreement covering the production and maintenance employees of

the Newton Falls plant, including the powerhouse employees, was entered into on August 19, 1947, between the respondent company and the Steelworkers union.

On December 10, 1947, approximately seven months after the hearing in the representation case brought by the Engineers union, A. F. of L., the Board handed down its decision, in which it held that the employees in the powerhouse in respondent company's Newton Falls plant constituted an appropriate unit, and ordered an election to be conducted not later than thirty days from the date of such decision.

On December 19, 1947, a meeting was held in the plant between representatives of the company and the Engineers union, presided over by the Election Examiner for the Board, for the purpose of arranging the details of the election. It was agreed that an election would be held January 7, 1948, and that the eligibility pay roll period would be the period immediately preceding the date of the Board's decision directing an election.

On December 26, however, the Engineers union filed with the Board the charges of unfair labor practices in this case, and the election for bargaining representative was indefinitely postponed pending the outcome of the present case. On the filing of the charges, the Regional Director issued a complaint setting forth that respondent had interfered with, restrained, and coerced its employees in the exercise of the rights guaranteed by Section 7 of the National Labor Relations Act, by assisting and supporting the Steelworkers union through recognizing it as the exclusive bargaining representative of its employees when respondent knew that the Engineers union claimed to represent a majority of the powerhouse employees who were alleged to constitute the appropriate unit for bargaining purposes. It was further alleged that the respondent had coerced its employees after the Engineers had filed a representation petition with the Board, and after a formal hearing had been conducted by the Board with respect to such petition. The complaint also alleged that the Act had been violated by respondent's entering into a collective bargaining agreement with the Steel-

workers during the pendency of the question of representation before the Board, and at a time when the Steelworkers did not represent a majority of the employees working in the powerhouse. The respondent company answered the foregoing complaint, denying that it had violated the Act. It stated that before it had signed the contract with the Steelworkers, it had received proof that a majority of the production and maintenance employees had designated the Steelworkers as their collective bargaining representative; that all its powerhouse employees had signed cards and accepted membership in the Steelworkers union; and that these employees had all signed an affidavit to this effect, and had requested the Board to dismiss the pending representation petition filed by the Engineers union.

A hearing was held on this complaint in June, 1948, and thereafter, the Trial Examiner issued his report, rejecting the company's contentions, holding that it was engaged in unfair labor practices, and recommending the action which was finally followed by the Board when it adopted the Examiner's findings, conclusions, and recommendations.

Under the uncontradicted testimony and evidence, no real question of representation existed at the time of the filing of the complaint or the hearing on the alleged unfair labor practices in this case. At the time the respondent company recognized the Steelworkers union as the bargaining representative of its maintenance and production employees, including the powerhouse employees, it is unquestioned that the Steelworkers union was the choice of the majority of respondent's maintenance and production employees, and, as to the employees in the powerhouse—the only group here in question—the undisputed evidence disclosed that the Steelworkers union was the unanimous choice of such employees as their bargaining representative. Not a single powerhouse employee wanted the Engineers union for bargaining representative at the time of the recognition by respondent company of the Steelworkers as such representative. On the contrary, all such employees had filed a statement under oath with the Board, stating that they wanted to be rep-

946

resented by the Steelworkers, and praying that the representation proceeeding previously commenced by the Engineers union, based on its representation of these same powerhouse employees, be dismissed. Aside from the respondent company's recognition of the Steelworkers as the representative of its employees and its entering into an agreement with this union as such representative, no claim is made that the company engaged in any unfair labor practices or coerced its employees in any manner in the selection of their representative. Whatever may have been the situation six months before the company recognized the Steelworkers union as the bargaining representative of its employees, is here irrelevant. There can be no question, from the record, that at the time respondent company recognized the Steelworkers, that union represented the great majority of all of respondent's employees, as well as all of the powerhouse employees. In fact, there was no evidence whatever to the contrary. The mere circumstance that there is pending an undisposed proceeding before the Board for the determination of the employees' choice of representative, based on a petition brought by one union, does not convict an employer of unfair labor practices for recognizing another union as the employees' representative on clear proof of such majority representation, submitted several months after the inception of the representation proceedings. This is not a case where a company has interfered with the right of its employees to a fair, unhampered choice of their bargaining representative, or where it has intruded its economic power to assist or encourage, or to oppose or discourage adherence to a particular labor organization. Respondent company did not enter a race between competing unions, nor give one an improper advantage during a campaign for the employees' favor. Here, the good faith of respondent company was unquestioned by the Board. It is clear that respondent was not guilty of any unfair labor practices.

The petition for enforcement of the order of the Board is denied.