## NATIONAL LABOR RELATIONS BOARD
v.
## INDIANAPOLIS NEWSPAPERS, Inc.
### No. 11002.

United States Court of Appeals
Seventh Circuit.
Feb. 19, 1954.

502

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Louis Schwartz, Atty., N.L.R.B., Washington, D. C., Dean E. Denlinger, Atty., N.L.R.B., Dayton, Ohio, for petitioner.

Frederic D. Anderson, Howard J. Cofield, Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., for respondent.

Before DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

The National Labor Relations Board filed this petition for enforcement of its order entered February 27, 1953 based upon its determination that respondent, in recognizing the Employees' Protective Association, one of two competing unions, as the bargaining agent of its circulation department employees, had committed unfair labor practices in violation of Section 8(a) (1) and (2) of the National Labor Relations Act, as amended by Labor Management Relations Act of 1947, 29 U.S.C.A. § 158(a) (1) and (2). The only question presented is whether, on the record as a whole, this finding is supported by substantial evidence.

Respondent corporation, publisher of the Indianapolis News and Indianapolis Star, was formed by a merger of the two newspapers in 1948. Prior to that time the circulation employees of the News had been represented by Local 70, American Newspaper Guild-CIO, and those of the Star by an independent union. After the merger respondent filed a petition with the Board for an election to determine which of the unions represented the employees of the combined circulation unit. The Board held an election and, on May 16, 1949, the Guild, recipient of a majority of the votes cast, was certified as bargaining representative for the combined unit. Thereafter, on January 9, 1950, respondent and the Guild entered into a bargaining agreement which was to expire August 1, 1950, but was to remain in force on a day to day basis until a new agreement should be negotiated.

After the specified expiration date the parties began negotiating for a new contract. After some twenty bargaining sessions had been held between August, 1950 and July 10, 1951, the parties found themselves near agreement. One major stumbling block to final consummation, however, was the employment by respondent of part-time branch managers in the circulation department. The Guild objected to this practice, arguing that it amounted to a breach of the original contract. On May 16, 1951 the issue had been submitted to arbitration. The arbitral award, entered July 11, 1951, was in favor of the Guild's position. On July 16, 1951 respondent called in all its circulation district managers who employed branch managers and informed them that the latter would have to be discharged in compliance with the award.

The following day Lamar Downtain, one of the district managers, who considered himself aggrieved by this situation, and certain other employees of the circulation department consulted an attorney with respect to changing their union representation. Petitions were circulated. On July 23 the dissatisfied employees presented to respondent's Vice President Worcester petitions signed by slightly more than 50% of the circulation department employees, in which the signers repudiated the Guild as bargaining agent and designated in its stead the newly organized independent Association. Worcester declined to take any action on the basis of this representation. On July 24, the Association's representatives returned to Worcester's office with their attorney and again presented the petitions, which then bore the signatures of more than 60% of the affected employees. The names on the petitions were checked against respondent's payroll, and respondent, finding that all signatories were employed in the department, then proceeded to recognize the As-

sociation as the unit's bargaining representative. On the afternoon of the 24th, Association representatives met with representatives of respondent and a bargaining agreement was consummated. The next day a meeting of the Association was held at which the membership ratified the new contract, which was then executed. On July 25 respondent notified the Guild, by letter, that the latter was no longer recognized as bargaining agent for the circulation department unit. Thereupon the Guild filed the charges from which these proceedings emanated.

The trial examiner found as a fact that the Association, from and after July 24, 1951, represented a majority of the affected employees and that respondent had been guilty of no unfair labor practice and recommended that the complaint be dismissed. The Board, though expressly adopting the trial examiner's findings, held that respondent's action in recognizing the Association constituted assistance to that organization in a conflict with a rival union in violation of Section 8(a)(2) of the Act and interference with the employees' right to choose their own bargaining agent in violation of Section 8(a)(1) and that respondent had not maintained that degree of neutrality required of an employer faced with conflicting claims of rival unions. In accord with this conclusion, respondent was ordered to cease and desist from recognizing the Association as bargaining agent for the circulation unit and from giving effect to any contractual relations with that organization until an election could be held and a bargaining agent certified by the Board. It is this order which the Board now seeks to enforce.

The facts are undisputed. The only issue with which we are concerned is whether as a matter of law they substantially support the Board's conclusion that respondent's actions constituted an unfair labor practice. Respondent insists that it was required by law to recognize the Association and that the petitions signed by more than 60% of the af-

fected employees resolved all doubt that the Association enjoyed majority support. On the other hand, the Board contends that the petitions merely posed rather than disposed of the question as to which of the unions enjoyed majority support. This assertion is said to find support in the fact of the Guild's prior certification, the fact that regular negotiations were continued between the Guild and respondent up to and including July 10, 1951, and in the unreliability of petitions as proof of majority will. In short, the Board's position is that nothing short of the results of a secret ballot is a reliable criterion for recognition of a bargaining agent when two unions are competing for the employees' support.

The postulate is too broadly drawn. The Act forbids interference by an employer with the rights of his employees to bargain collectively, and, for that purpose, to select their own bargaining representative. When two unions are vieing for majority support of his employees, an employer must, of course, maintain a position of strict neutrality. He must refrain from any action which tends to give either an advantage over its rival; he may do nothing which tends to coerce his employees to join or to refrain from joining a particular union. Recognition of one competitor as bargaining agent during this contest period, absent proof of majority support, is a proscribed act. See, e. g., Harrison Sheet Steel Co. v. N. L. R. B., 7 Cir., 194 F.2d 407, 410; N. L. R. B. v. Faultless Caster Corp., 7 Cir., 135 F.2d 559; Elastic Stop Nut Corp. v. N. L. R. B., 8 Cir., 142 F.2d 371, 375–376, certiorari denied 323 U.S. 722, 65 S.Ct. 55, 89 L.Ed. 580.

The Act does not require, however, that this neutrality continue until the last dissident voice is stilled. Indeed, in keeping with the purpose of the Act, harmonious employer-employee relations require that the instability inherent in a contest end when one contestant is able to muster majority support. Although the prize of recognition must not be employed coercively to influence the employees in making their decision, once in-

disputable proof of majority choice is presented to the employer, the Act imposes on him a duty to award recognition to the agent so chosen by his employees. N. L. R. B. v. W. T. Grant Co., 9 Cir., 199 F.2d 711, certiorari denied 344 U.S. 928, 73 S.Ct. 497, 97 L.Ed. 714; N. L. R. B. v. Gutmann & Co., 7 Cir., 121 F.2d 756; Stewart-Warner Corp. v. N. L. R. B., 4 Cir., 194 F.2d 207; N. L. R. B. v. Standard Steel Spring Co., 6 Cir., 180 F.2d 942; N. L. R. B. v. Flotill Products, Inc., 9 Cir., 180 F.2d 441.

Reiteration of what has been said in these cases would serve only to lengthen this memorandum unduly. The decisive question in any case is whether there has been an uninfluenced expression of majority will; it matters not how that will be expressed. Although the result of a secret election may well be the most convincing means of expression, the election medium is by no means exclusive. However expressed, an employer is bound by the employees' determination. In doing so, he should be free of charges of unfair labor practices absent substantial evidence indicative of bad faith.

Here the trial examiner found that the Association was supported by a majority of respondent's circulation department employees. The Board did not disturb this finding. No evidence of doubt as to its majority status appears of record. No contention is made that the signatures on the petitions were not authentic. The record is wholly devoid, as well, of evidence that respondent was not completely impartial in all its dealings with the respective parties.

We need not consider whether courses of action other than recognition were open to respondent on receipt of the submitted proof. If the action it took was free of wrongful intent, our inquiry should end there. Employing the language of the Sixth Circuit in N. L. R. B. v. Standard Steel Spring Co., 180 F.2d 942, at page 946, "This is not a case where a company has interfered with the right of its employees to a fair, unhampered choice of their bargaining representative, or where it has intruded its economic power to assist or encourage, or to oppose or discourage adherence to a particular labor organization. Respondent company did not enter a race between competing unions, nor give one an improper advantage during a campaign for the employees' favor." What respondent has done is merely to accept petitions tendered by one of the competitors as proof of the success of its campaign. The record discloses no reason why the authenticity of this claim of majority status should have been subject to any doubt. Respondent's recognition of the Association was a legitimate, if not the mandatory, course of action. On the record before us we cannot say that its conduct constituted an unfair labor practice.

The cases relied on by the Board are inapposite, and no detailed discussion of them is necessary. Suffice it to say that there is no evidence that respondent was guilty of such coercive practices as were there condemned. See, e. g., N. L. R. B. v. Waterman S. S. Corp., 309 U.S. 206, 60 S.Ct. 493, 84 L.Ed. 704; N. L. R. B. v. Pennsylvania Greyhound Lines, 303 U.S. 261, 58 S.Ct. 571, 82 L.Ed. 831; Harrison Sheet Steel Co. v. N. L. R. B., 7 Cir., 194 F.2d 407; Elastic Stop Nut Corp. v. N. L. R. B., 8 Cir., 142 F.2d 371, certiorari denied 323 U.S. 722, 65 S.Ct. 55, 89 L.Ed. 580.

The petition for enforcement is denied.