NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

NORTH ELECTRIC COMPANY,
Respondent.

No. 14483.

United States Court of Appeals
Sixth Circuit.

Nov. 20, 1961.

---

Melvin J. Welles, Atty., N. L. R. B., Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Solomon I. Hirsh, Atty., Washington, D. C., on the brief), for petitioner.

Fred O. Burkhalter, Cleveland, Ohio (Jamison, Ulrich, Hope, Johnson & Burt, George S. Maxwell, Cleveland, Ohio, on the brief), for respondent.

Before MARTIN and CECIL, Circuit Judges, and DARR, Senior District Judge.

CECIL, Circuit Judge.

The National Labor Relations Board found that North Electric Company violated Section 8(a) (1), Section 158(a) (1), Title 29 U.S.C.A., of the National Labor Relations Act and issued a cease and desist order with instructions to post the usual notices in conspicuous places in the Company's plant. 129 N.L.R.B. No. 78.

The matter now comes before this Court on petition of the Board for enforcement of its order. The substance of the violation is that North Electric Company, respondent herein, entered into a collective bargaining agreement with the incumbent Independent Union, at a time when a conflicting claim by an outside union had raised a real question concerning representation.

The question presented is whether the respondent had knowledge or a reasonable basis for believing, at the time it entered into the agreement, that a real question of representation existed. Unless there was knowledge or a reasonable basis to believe that such a question existed, there was no basis for finding the Company guilty of an unfair labor practice.

The facts are as follows: In 1950, the Company recognized Independent Workers Union of North Electric Company as exclusive bargaining agent for its employees. In 1956, the Company and the Independent Union entered into a contract that expired July 1, 1959. In January of that year, the Company and this Union started negotiations for a new contract.

The United Steel Workers of America, AFL–CIO, wrote a letter to the Company on April 8, 1959, stating that a majority of the maintenance and production workers had indicated a desire to have it represent them and proposed a meeting. The next day it filed with the Board a representation petition for certification, but shortly withdrew it for the reason that it was not properly signed. On April 22nd, the Steel Workers filed another petition with the Board.

As a result of this petition, the Board, on May 1st, issued a notice of a hearing to be held on May 21st. Respondent's representatives attended the hearing.

By June 8th, the negotiations of the Company and the Independent had reached an agreement on terms of a contract. The contract which is the basis of the complaint was signed on June 30th.

On July 6th, the Board announced that it found a representation question to exist and ordered an election. The election was held August 4th and the Independent Union won by a majority of eleven out of a total of 737 valid ballots. Shortly after the election, the Steel Workers filed an objection to the election but later withdrew it.

It then filed the unfair labor practice charges against the Company, which are now in issue, on August 19th. The Board certified the Independent as bargaining agent, on August 25th.

█ That an employer must maintain strict neutrality, when a substantial number of employees in a unit evidence conflicting desires, as to which union, if any, they wish to join, is a principle well established in labor law. Ohio Ferro-Alloys Corp. v. National Labor Relations Board, 213 F.2d 646, C.A. 6; Hoover Co. v. National Labor Relations Board, 191 F.2d 380, C.A. 6; National Labor Relations Board v. Kearney and Trecker Corporation, 237 F.2d 416, C.A. 7; National Labor Relations Board v. Indianapolis Newspapers, Inc., 210 F.2d 501, C.A. 7; Harrison Sheet Steel Co. v. National Labor Relations Board, 194 F.2d 407, C.A. 7; National Labor Relations Board v. National Container Corp., 211 F.2d 525, C.A. 2. The problem here is how to apply the principle where, as in the case at bar, there is an incumbent union which has been recognized as the exclusive bargaining agent for nine years and has a renewal provision in its contract.

█ Counsel for the Board urges that the Midwest Piping doctrine is controlling. This doctrine stems from a decision of the Board in, In the Matter of Midwest Piping and Supply Co., Inc., and United Steel Workers of America, CIO., 63 N.L.R.B. 1060. The essence of that doctrine is stated at p. 1070, "The respondent knew, at the time that the contract was executed, that there existed a real question concerning the representation of the employees in question." The Board tailored its conclusion to the facts of that case and there is no question about the fit.

The so-called doctrine of that case states the question which must be inquired into in each case of this type. Did the employer know or have reasonable ground to believe that a question concerning representation existed at the time the contract was executed? The determination of this question must be made from the facts of each case.

Counsel for the respondent have cited two recent cases which more nearly fit the facts of the case at bar. St. Louis Independent Packing Co. v. N. L. R. B., 291 F.2d 700, 704, 48 LRRM 2469, C.A. 7, and N. L. R. B. v. Swift & Co., 294 F.2d 285, 288, 48 LRRM 2699, C.A. 3.

In the St. Louis case, the Company continued negotiations with the incumbent union after an election had been ordered by the Board. It granted a wage increase and otherwise showed preference for the incumbent union. Although the court enforced the Board's order, it did not consider the employer's conduct before the date of the order of election. It said: "The record before us discloses nothing to make petitioner aware that a 'real question' of representation existed until the Board ordered an election."

In the Swift case, the employer entered into a contract with the incumbent union, after a hearing had been held on a representation petition filed by a rival union. The court denied enforcement of the Board's order, for the reason that there was an "absence of substantial evidence in the record to support the finding that the employer had a reasonable basis for believing that the brotherhood no longer represented a majority of its employees, * * *."

In the case at bar, the record does not show that the respondent ever had any

**140**

information concerning the rival union, from the time of the filing of the representation petition until it ordered an election. As in the Swift case, it entered into the contract after hearing on the petition was had but before the order for an election.

We conclude that the filing of the petition and a hearing thereon does not in and of itself constitute a reasonable basis for the employer to believe that a real question of representation exists. There being a lack of substantial evidence in the record to support the Board's order, its enforcement is hereby denied.