**MODINE MANUFACTURING COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 20674.

United States Court of Appeals, Eighth Circuit.

Dec. 23, 1971.

John D. O'Brien, Chicago, Ill., for petitioner.

Elliott Moore, Atty., N. L. R. B., Washington, D. C., for respondent.

Before VAN OOSTERHOUT, HEANEY and ROSS, Circuit Judges.

HEANEY, Circuit Judge.

The National Labor Relations Board found that the Modine Manufacturing Company had violated §§ 8(a) (1) and (5) of the National Labor Relations Act by refusing to bargain with the United Automobile Workers, and that it had violated § 8(a) (2) of the Act by continuing to recognize and to give effect to a contract entered into with the Sheet

Metal Workers Union. It ordered Modine to bargain with UAW, and to cease giving effect to its contract with SMW. It further ordered Modine to reimburse its employees for certain monies withheld from them for initiation fees and dues collected on behalf of SMW. Modine petitions this Court to review the order, and the Board petitions for its enforcement. The Board's decision and order are reported at 186 N.L.R.B. No. 84, 76 L.R.R.M. 1080 (1970). We deny enforcement of the Board's order.

Modine constructed a manufacturing plant at Trenton, Missouri, in 1968. It hired its first employees in July of that year and started operations in September. The SMW and UAW initiated organizational campaigns among Modine's employees in October, 1968. On January 20, 1969, thirty-seven of Modine's sixty-seven employees met to determine which of the two unions, if either, would represent them. Neither union sent representatives to the meeting. At the outset of the meeting, the employees agreed to abide by the results of an informal secret vote. SMW won over UAW by twenty-six votes to ten. The UAW adherents signed SMW authorization cards after the results of the poll were announced. The next morning, a letter addressed to UAW officials was circulated in the plant. The letter was signed by ten employees, who requested the return of any authorization cards they had signed and withdrew any authorization previously given to UAW.

Late in the forenoon, representatives of SMW arrived at the plant and requested, orally and in writing, that Modine recognize SMW as the bargaining agent of the employees and negotiate a labor agreement. SMW's representatives gave the plant manager forty authorization cards, and suggested that a third party be named to verify them if the company doubted the authenticity of the cards.

Supervisory employees, including the plant manager, examined the cards and rejected one as belonging to a former employee. The plant manager stated that any decision regarding recognition of SMW would have to be made by the company's vice president for labor relations in the home office in Racine, Wisconsin. After SMW's representatives left, the plant manager called the vice president and reported what had happened. The vice president made no decision at that time, but called back later in the day and stated that since SMW had presented authorization cards signed by a majority of the employees to Modine's local management and since local management had examined the cards, Modine was obligated to recognize SMW as the bargaining agent for the employees. A wire confirming recognition was sent to SMW on January 20, and a letter formally recognizing that union was mailed the following day.

Modine knew that both unions had been attempting to organize its employees, and was aware that the employees had voted on January 20 to be represented by SMW.

On January 28, 1969, UAW filed a petition seeking an election among the employees. The record does not reveal the number of authorization cards submitted with the request. In fact, the Board refused to permit inquiry into this matter at the hearing. No request for recognition was ever made by UAW nor had it ever communicated to the company a claim of interest among the employees.

On March 30, 1969, following a series of negotiating meetings, Modine and SMW signed a three-year collective bargaining agreement which was ratified by the employees. No contention is made that the agreement is an unlawful one.

The Board conducted a hearing on UAW's election petition. In December, 1969, it decided that the company's prior recognition of SMW did not constitute a bar to the election.

The Board reasoned as follows:

"It is clear, and the Employer in fact admits, that it was aware of the organizational activities of [UAW] and

[SMW] from the outset of their campaigns. Moreover, * * * the Employer was aware at the time it granted recognition to the [Sheet Metal Workers] that [UAW's] organizing campaign was still in progress.

"Accordingly, we find that the Employer's recognition of the [Sheet Metal Workers] on January 21, 1969, and the subsequent execution of the collective-bargaining agreement, may not be considered as bars to the instant petition under the Board's rule in Keller Plastics [157 N.L.R.B. No. 583, 61 L.R.R.M. 1396 (1966)]. There is now (sic) showing here that recognition was extended to [SMW] at a time when the Employer believed that only that Union was actively engaged in organizing the Employer's employees. On the contrary, the Employer was admittedly aware on the date it agreed to conduct the cross-check of the cards that the [UAW] here had a substantial interest, but it nevertheless extended recognition to the [SMW]. * * * "

Modine Manufacturing Company and UAW, 180 N.L.R.B. No. 70, 73 L.R.R.M. 1031, 1032 (1969).

On January 12, 1970, the Board conducted an election. By that time, one hundred and twenty-four employees were eligible to vote. UAW won the election by a vote of seventy-one to forty-seven. No objections to the election were filed.

On February 2, 1970, UAW requested Modine to bargain. It refused to do so because of its contract with SMW.

UAW then filed unfair labor practice charges against Modine. The matter was submitted to the Board on the basis of the record made at the representation hearing and on the basis of a short stipulation of facts. The parties waived submission to a Trial Examiner.

The Board found that the company violated §§ 8(a) (1) and (5) of the Act by refusing to bargain with UAW, and that it violated §§ 8(a) (1) and (2) by continuing to recognize SMW after the date of UAW's certification as bargaining agent. Its order stated:

"In the instant case, [Modine] takes the position that the UAW did not have a substantial showing of interest at the time [Modine] recognized the Sheet Metal Workers, and therefore, that the initial recognition was lawful and a bar to the election. In support of its position, [Modine] requests the Board to open the record and produce all of the UAW membership and authorization cards in order to determine the extent of the UAW's showing of interest at the time recognition was extended to the Sheet Metal Workers. In this connection [Modine] has subpoenaed the UAW cards. [Modine] claims that the Hearing Officer, in the representation proceeding, under the guise of complying with the Board policy that showing of interest is not litigable, erroneously revoked a subpoena for the UAW cards.

"The Board has ruled in the representation proceeding that the Hearing Officer's rulings were without error, that [Modine's] contention that the UAW did not have a substantial interest is without merit, and that the recognition of the Sheet Metal Workers was not a bar to the UAW's petition for an election. Thus, the Board has already decided the very questions which [Modine] now raises. As noted earlier, Board policy does not permit litigation, in an unfair labor practice case, of issues which were, or could have been, litigated in a prior representation proceeding. Under these circumstances, we find that [Modine] has failed to raise any issue which is properly litigable in this proceeding. * * * " (Footnotes omitted.)

The Board's order required Modine to bargain with UAW, to withdraw recognition from SMW, to reimburse employees for union dues and fees withheld from them subsequent to the January 12, 1970, election, and to post the usual notices.

No cases precisely on point have been cited to us by the Board or Modine. The Board relies on its rule that informal recognition granted a *union* will not constitute a bar to a petition by a rival labor organization where it does not affirmatively appear that the employer extended recognition to the *union* in good faith on the basis of a previously demonstrated showing of majority and at a time when *only* that *union* was actively engaged in organizing unit employees.[1] This rule, so far as we know, has previously been applied only in representation cases. It does not, to our knowledge, have the specific approval of any Court of Appeals.

On the other hand, Modine relies on United States Courts of Appeals decisions holding that an employer is not guilty of an unfair labor practice if it bargains for a reasonable time with a union it has voluntarily recognized if *no real* question of representation existed at the time recognition was extended, and if the union claiming recognition in fact represented and uncoerced majority of employees at the time of recognition and had sufficiently demonstrated that fact to the employer.[2]

It is apparent that the result in this case depends on whether we rely upon and extend the rationale followed by the Board in representation cases, or that adopted by the Courts in unfair labor practice cases. If we do the former, we maximize the employees' freedom of choice. If we do the latter, we encourage stability in labor relations.

1. Display Sign Svc., 180 N.L.R.B. No. 6, 72 L.R.R.M. 1577 (1969); Pineville Kraft Corp., 173 N.L.R.B. No. 128, 69 L.R.R.M. 1442 (1968); Allied Super Markets, Inc., 167 N.L.R.B. No. 48, 66 L.R.R.M. 1044 (1967); Superior Furniture Mfg. Co., Inc., 167 N.L.R.B. No. 40, 66 L.R.R.M. 1036 (1967); Sound Contractors Assn., 162 N.L.R.B. No. 45, 64 L.R.R.M. 1009 (1966); Rheingold Breweries, Inc., 162 N.L.R.B. No. 32, 64 L.R.R.M. 1010 (1966); Bell Cabinet Co., 73 N.L.R.B. No. 62, 19 L.R.R.M. 1330 (1947); Henry Weis Mfg. Co., Inc., 49 N.L.R.B. No. 511, 12 L.R.R.M. 140 (1943).

2. American Bread Company v. N.L.R.B., 411 F.2d 147, 155 (6th Cir. 1969); N.L.R.B. v. Air Master Corporation, 339 F.2d 553, 557 (3rd Cir. 1964); N.L.R.B. v. North Electric Company, 296 F.2d 137, 139 (6th Cir. 1961); N.L.R.B. v. Wheland Company, 271 F.2d 122, 124 (6th Cir. 1959); District 50, United Mine Wkrs. of America v. National Labor Rel. Bd., 234 F.2d 565, 570 (4th Cir. 1956); National Labor Rel. Bd. v. Indianapolis Newspapers, 210 F.2d 501, 503 (7th Cir. 1954). See also, Iowa Beef Packers, Inc. v. N.L.R.B., 331 F.2d 176, 182 (8th Cir. 1964). In each of the above cases, the question was whether an employer should be held to have committed an unfair labor practice by voluntarily recognizing and bargaining with the union that it believed did, and actually did, represent a majority of its employees. In each case, the Court held that no unfair labor practice had been committed. The rationale of the decisions is best explained in the *Indianapolis Newspapers* case. There the Court said:

"* * * The Act forbids interference by an employer with the rights of his employees to bargain collectively, and, for that purpose, to select their own bargaining representative. When two unions are vying for majority support of his employees, an employer must, of course, maintain a position of strict neutrality. He must refrain from any action which tends to give either an advantage over its rival; he may do nothing which tends to coerce his employees to join or to refrain from joining a particular union. Recognition of one competitor as bargaining agent during this contest period, absent proof of majority support, is a proscribed act. * * *

"The Act does not require, however, that this neutrality continue until the last dissident voice is stilled. Indeed, in keeping with the purpose of the Act, harmonious employer-employee relations require that the instability inherent in a contest end when one contestant is able to muster majority support. Although the prize of recognition must not be employed coercively to influence the employees in making their decision, once indisputable proof of majority choice is presented to the employer, the Act imposes on him a duty to award recognition to the agent so chosen by his employees. * * * *"

*Id.* at 210 F.2d 503–504.

■ We feel that the rationale of the Court decisions ought to be extended, cautiously, to permit an employer to continue to recognize a union it voluntarily recognized in circumstances similar to those found here. This choice permits us to recognize the employees' choice as of the date it was initially made while giving some protection to an employer who, in good faith, bargains with a union which it properly and voluntarily recognized.

The circumstances we consider important are: (1) that SMW represented a substantial and uncoerced majority of Modine's employees on the date it was granted recognition, (2) that SMW demonstrated its majority to Modine by submitting properly signed and dated authorization cards, (3) that Modine knew that its employees had met the evening before and had voted nearly three-to-one in favor of SMW, and that after the meeting, UAW adherents had rescinded their UAW authorization cards, and (4) that there is no evidence in the record to indicate that UAW represented any employees on the date that Modine recognized SMW.

■ The Board suggests that an employer can protect itself from unfair labor practice charges by demanding an election in every situation in which two or more unions are attempting to organize its employees. We agree that the suggested approach is permissible,[3] but it is not necessary in situations such as this. Furthermore, this approach would discourage voluntary recognition. In situations such as this, the employer's choice is not always an easy one. The employer is sometimes confronted with an ultimatum to recognize a union or to suffer a strike for recognition. It should be permitted to take the former course if all the conditions previously noted are present.

The Board argues that UAW's victory at the Board-conducted election demonstrates the validity of its position. It reasons that because UAW won the election, a significant number of employees must have wanted UAW on the date Modine recognized SMW. The Board attempts to buttress this conclusion by arguing that SMW, as the incumbent union, had an advantage in the election. We disagree. The election did not take place until a year after the company recognized SMW, and by that time, the number of employees had increased from sixty-seven to one hundred and twenty-four. Furthermore, we think it more likely that the contending union would have the advantage because it could promise the employees a new and better contract than they then had, while the incumbent union would have to stand on its accomplishments to that date. In inflationary times, the ability to make this promise might well be an advantage.

■ We do not believe our result unduly limits the Board's discretion. Although we do not permit it to apply its per se rule to unfair labor practice cases, it can continue to apply the rule in representation cases subject to the knowledge that it may not be able to obtain enforcement of a subsequent refusal to bargain order unless it can prove that a real question of representation existed as of the date of recognition, that the recognized union did not represent a substantial majority of the employees on the critical date, or that if it did, its majority was coerced. Recognizing these limitations, the Board may decide to more fully explore these questions at the representation hearings where prior voluntary recognition of a nonpetitioning union is alleged; and if it does, it will have taken a step forward.

Finally, the Board contends that the recognition bar doctrine is a procedural rule which may be applied or waived in the interest of stability and fairness in collective bargaining as the facts of a given case demand.[4]

3. See, N.L.R.B. v. Signal Oil and Gas Company, 303 F.2d 785, 788, n. 3 (5th Cir. 1962).

4. National Labor Relations Board v. Grace Co., 184 F.2d 126, 129 (8th Cir. 1950).

We certainly have no quarrel with the statement of principle. But the statement implies an exercise of discretion and a weighing of the sometimes competing interests of the employer in stable labor relations and of the employees in free choice of representatives. Here, no weighing was done. An absolute rule was applied. In our view, the Board cannot cloak such a rule in the rhetoric of discretionary action and expect automatic enforcement of its orders.

Enforcement denied.