**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PETER PAUL, INC., Respondent, and Industrial Candy Workers Union, Intervenor.**

No. 71–1397.

United States Court of Appeals, Ninth Circuit.

Aug. 1, 1972.

Rehearing Denied Nov. 14, 1972.

Charles Steele, Atty. (argued), William Wachter, Joseph E. Mayer, Attys., Dominic L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Atty. Gen., Peter G. Nash, Gen. Counsel, Washington, D. C., Roy O. Hoffman, Director, NLRB, Region 20, San Francisco, Cal., for petitioner.

Robert J. Scolnik (argued), San Francisco, Cal., Marvin S. Siegel (argued),

Menlo Park, Cal., Norman Leonard, San Francisco, Cal., Robert B. Snow, Jr., New Haven, Conn., Leroy King, ILWU Local # 6, San Francisco, Cal., for respondent.

Before CHAMBERS, ELY and KILKENNY, Circuit Judges.

KILKENNY, Circuit Judge:

Peter Paul, Inc. [Company] manufactures and packages candy in Salinas, California. For approximately 20 years prior to March 19, 1968, Industrial Candy Workers Union [ICW] [1] had been the certified bargaining representative of the Company's employees. On that date, ICW notified the Company that it wished to initiate negotiations for a new contract inasmuch as the one in force was scheduled to expire on June 30th of that year. Negotiations commenced a short time thereafter.

Early in 1968, the International Longshoremen's and Warehousemen's Union [ILWU] commenced an organizational campaign in the Company's plant and on April 29, 1968, filed a petition for an election among the employees in the unit covered by the ICW contract. The petition, filed with the regional office of NLRB [Board], asserted that there were 141 employees in the union and at least 30% of the employees supported the petition. Some 45 authorization cards were submitted to substantiate the claim. A copy of the petition, together with a letter from the Board, was received by the Company on May 1st. The letter requested a list of all employees in the described unit in order to determine whether the 30% claim was valid. The Company responded, but did not supply the requested payroll list, asking instead, whether the showing by ILWU was sufficient and proper. The Board then reasserted its request for a list and expressed the view that "the showing of interest is sufficient."

In the meantime, the ICW sent the Company a letter enclosing 134 new check-off employee authorizations and requested that negotiations be expedited. On May 5th, the Company met with ICW representatives and informed them of the ILWU petition. The Company expressed a preference for ICW and continued to meet and negotiate with its representatives. Shortly thereafter, ILWU filed with the Board an unfair labor practice charge, alleging that the Company had violated § 8(a) (2) and (1) of the National Labor Relations Act [29 U.S.C. § 158(a) (2) (1)], by continuing to negotiate with ICW after a question of representation had been raised. Shortly thereafter, the Board notified the Company that the representation case would be held in abeyance until after a disposition had been made of the charge. ICW and the Company continued to negotiate and reached an agreement on May 31st. A three-year contract was formally signed on June 28th.

Later, the complaint here at issue was filed. The trial examiner found that the Company was guilty of the unfair labor practice as charged. The Board agreed with the findings and conclusions of the examiner and ordered the Company to set aside the contract and cease and desist from recognizing or bargaining with ICW until it (or in the alternative ILWU) was certified as the appropriate bargaining representative of the Company employees.

## ISSUE

Simply stated, the issue presented is whether there existed a real question concerning representation when the Company, in June, 1968, recognized ICW as the exclusive bargaining agent and entered into the collective bargaining agreement. 29 U.S.C. § 159.

## DISCUSSION

The record demonstrates that the Company and ICW had cordially and successfully maintained their labor relations on a businesslike basis since 1952.

---

1. And a predecessor.

Out of a total of 141 employees[2] in the unit, the ICW on May 3, 1968, a few days after ILWU filed its petition for an election, filed with the Company check off authorizations of 134 of the employees. In our analysis of the issue, we must keep in mind that one of the principal objectives of the National Labor Relations Act is to promote peace and tranquility between labor and management, while insuring employees the opportunity to be represented by the union of their choice. Although the Company expressed a preference for ICW, there is absolutely no showing that it in any way interfered with the right of its employees to a fair, unhampered choice of their bargaining representative, nor is there any evidence that it used its economic powers to assert or encourage or to oppose or discourage adherence to any particular labor organization. The fact that the Company did not comply with the Board's request for a list of employees in the unit is of no significance, since the Board made no formal finding that a real question of representation existed. The National Labor Relations Act imposes no specific duty on the Company to furnish such a list, although compliance with the Board's request would have facilitated the representation proceedings.

## CONCLUSIONS

On these facts, the Board's reliance on Midwest Piping & Supply Co., Inc., 63 NLRB 1060, 17 LRRN 40 (1945), and its progeny, is misplaced.

In *Midwest* there was direct evidence of interference, restraint and coercion on the part of the employer and a real issue concerning representation. Here, at most, the Company expressed a preference for the union with which it had been working in concert for approximately 20 years and later continued negotiations and arrived at a contract after it learned of the ILWU petition and after that organization had filed the unfair labor practice charge with the Board. On this record, we prefer to apply the law stated in American Bread Co. v. NLRB, 411 F.2d 147, 155 (C.A.6 1969); NLRB v. Air Master Corp., 339 F.2d 553 (C.A.3 1964); Iowa Beef Packers, Inc. v. NLRB, 331 F.2d 176 (C.A.8 1964); NLRB v. North Electric Co., 296.F.2d 137 (C.A.6 1961); NLRB v. Swift & Co., 294 F.2d 285 (C.A.3 1961); Cleaver-Brooks Mfg. Co. v. NLRB, 264 F.2d 637 (C.A.7 1959), cert. denied 361 U.S. 817, 80 S.Ct. 58, 4 L. Ed.2d 63 (1959), and NLRB v. Standard Steel Spring Co., 180 F.2d 942 (C.A.6 1950), in which it is recognized that an employer is not in violation of the act where there is no real question concerning representation and it continues to negotiate with the union which then represented its employees. The record before us demonstrates that ICW represented an overwhelming majority of the employees. If the Board was in doubt whether a real question of representation existed, it should have made a decision on that issue *prior* to entertaining the unfair labor practices claim. Here, it made no such determination. The reason is obvious. On the record before it, no such determination could have been made, without giving the employer's failure to provide the list "presumptive" effect. In these circumstances, the employer did not breach its neutral position by recognizing ICW. Modine Mfg. Co. v. NLRB, 453 F.2d 292 (C.A.8 1971); NLRB v. Air Master Corp., *supra*; NLRB v. North Electric Co., *supra*.

Since there is no substantial evidence in support of the Board's finding that the Company by recognizing ICW was guilty of an unfair labor practice in violation of § 8(a) (2), the petition for enforcement of the order must be denied.

It is so ordered.

ELY, Circuit Judge (dissenting):

I respectfully dissent. One of the Hearing Examiner's "Conclusions of Law," specifically No. 3, reads: "A

---

2. Company claims 157.

.

question concerning representation existed among employees of Respondent at all material times after May 1, 1968." Additionally, the Examiner's conclusion No. 4 was that the Respondent had engaged in unfair labor practices "[b]y continuing to bargain and entering into a contract with ICW *while there was a question concerning representation* . . ." (emphasis added). These "Conclusions of Law" were adopted by the Board and were, essentially, factual determinations for which I find plenty of evidentiary support in the record.

Next, I take exception to the majority's concept, as "[s]imply stated," of the issue before us. As I see it, the true issue is whether an employer, while refusing to supply the Board with information deemed essential to the Board's determination of whether a question of representation exists, has the power, paramount to that of the Board, to make its own self-determination that no such question does exist. My opinion is that it does not have, and should not have, such power. I do not asperse the employer's motives in this particular case, but the impact of the majority's opinion might, I believe, produce generally disastrous consequences. It opens a way by which an employer can unilaterally frustrate those free democratic processes through which employees are supposed to be able to select their bargaining representative. When, as here, such an employer is presented with a petition claiming that a substantial number of its employees desires new representation and the Board seeks, as it should, to verify the claim, the employer may arbitrarily flout the Board, refusing to supply the barest factual data essential to the confirmation. Having thus been contemptuous of one of our most responsible governmental agencies, the employer may then quickly proceed, as the Respondent here did, to enter into another long-term contract with the challenged representative. And the contract, depending on existing relationships between all parties concerned, may, in its terms, have operated to the grievous economic disadvantage of all the concerned employees, including, of course, those whose freedom of choice the Board sought to protect. I cannot believe that this is right; hence, I would grant the Board's petition for the enforcement of its Order, which, incidentally, the Board itself described as "narrow."