339 F.2d 553
 NATIONAL LABOR RELATIONS BOARD, Petitioner
v.
AIR MASTER CORPORATION, Air Master Manufacturing Company,
Inc., Philadelphia Industries, Inc., Aluminum Press
Corporation, Aluminum Smelting Corporation, and Allied
Trades and Bulk Plant Workers, Amusement Park Workers and
Industrial Workers Local 158, Philadelphia and Vicinity,
Internal Brotherhood of Teamsters, Chauffeurs, Warehousemen
and Helpers of America, Respondents.
 No. 14777.
 United States Court of Appeals Third Circuit.
 Argued Sept. 22, 1964.
Decided Dec. 14, 1964.
 
 Melvin Welles, Atty., N.L.R.B., Washington, D.C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Gladys Kessler, Atty., N.L.R.B., on the brief), for petitioner.
 Robert E. Wachs, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for Air Master Corp. and others
 Saul C. Waldbaum, Philadelphia, Pa., for Union.
 Before HASTIE and FORMAN, Circuit Judges, and KIRKPATRICK, District judge.
 HASTIE, Circuit Judge.
 
 
 1
 This petition seeks enforcement of a cease and desist order based upon the National Labor Relations Board's conclusion that a union and an employer unlawfully interfered with employees' rights of self-organization, as guaranteed by section 7 of the National Labor Relations Act, by respectively demanding and granting union recognition and executing a labor contract while there was outstanding 'a real question concerning representation'.
 
 
 2
 It is clear that until a majority of the employees concerned shall have chosen freely to be represented by a particular union, recognition of that union by the employer is likely to have an improperly coercive effect upon the employees' right to bargain collectively through representatives of their own choosing. The Board has formulated this conception in its Midwest Piping doctrine, which precludes the recognition of either of rival unions so long as there exists 'a real question concerning * * * representation'. Midwest Piping & Supply Co., Inc., 1945, 63 NLRB 1060. The difficulty here, as in other cases that have been litigated under this doctrine, arises in determining whether 'a real question concerning representation' exists in particular circumstances.
 
 
 3
 For several years the production and maintenance employees of Air Master Corporation, the respondent employer, had been represented by Seafarers International Union, hereinafter designated 'SIU'. Beginning January 15, 1962, with their most recent collective bargaining contract about to expire on January 31, the employer and the union convened bargaining sessions in an effort to negotiate a new contract. By January 25, the negotiations appeared to be stalemated. At a January 28 membership meeting, the employee representatives who had been conducting the negotiations reported that the employer 'seemed to doubt our strength' and that the leadership 'might come before you with a recommendation for a change of affiliation to a stronger International Union'. Indeed, the leaders had already been discussing with the International Brotherhood of Teamsters the possibility of such a change of affiliation.
 
 
 4
 On the morning of January 31, the leadership caused the shop stewards to distribute among the employees cards encaptioned 'Application for Membership International Brotherhood of Teamsters, * * *.' A large majority of the employees immediately signed these cards, which were delivered to the appropriate Teamsters' headquarters the same day.
 
 
 5
 Bargaining was resumed at a session convened during the evening of January 31. At about 11 P.M., less than an hour before the expiration of the labor contract between Air Master and SIU, the bargaining representatives of the employees informed the employer's representatives that an 'overwhelming majority' of the employees had 'disaffiliated from' SIU and had authorized the Teamsters to represent them. The employee representatives also disavowed their own connection with SIU and declared that they were bargaining as functionaries of the Teamsters' union.
 
 
 6
 The negotiators for Air Master immediately challenged these assertions and demanded proof that the Teamsters now represented a majority of the employees. The employee representatives insisted that this question of representation be decided immediately and announced that the men would not return to work in the morning or thereafter without a contract. Accordingly, about midnight, a neutral person was agreed upon and summoned to check the dignatures on the Teamsters' authorization cards against payroll signatures and to certify the number of employees who had chosen the Teamsters as their representative. This process was completed by 4 A.M., when the neutral party reported and certified that at least 230 of Air Master's 270 employees had signed Teamsters' authorization cards.
 
 
 7
 Somewhat later that morning, February 1, bargaining was resumed with the employer then for the first time according the Teamsters de facto recognition as the bargaining representative of its employees. This involved no change in the identity of the employee negotiators or in their demands. That afternoon an 'interim agreement' was reached subject to membership ratification. The same evening the membership met and formally voted to disaffiliate from SIU and to affiliate with the Teamsters. However, the membership also voted to reject the proposed contract. Bargaining was resumed and a few days later an agreement was reached and accepted by the membership.
 
 
 8
 The officials of SIU International did not hear of the disaffection at Air Master until the evening of February 1. On February 2, apparently without investigation, they advised the employer that the union 'still represents the majority of the employees'. They also demanded a meeting 'in order to complete negotiations for a labor agreement.' They tendered no proof that SIU still represented a majority of the employees. Nor has any such showing been made or attempted since that time.
 
 
 9
 On February 4, Air Master and the Teamsters executed a labor contract. On February 5, ISU filed both a representation petition under section 9(c)(1) of the National Labor Relations Act, seeking a Board supervised election, and unfair labor practice charges against Air Master and the Teamsters. The Regional Director dismissed the representation petition as untimely because, as the Board tells us in its present brief, the Air Master-teamsters contract had been signed before the petition was filed. The Board affirmed this action. However, pursuant to the separate unfair labor practice charges, the General Counsel filed a complaint which resulted in the Board's order that we are now asked to enforce.
 
 
 10
 We consider first the factual question of the employees' choice of a bargaining representative as it appeared during the morning of February 1 when the employer first accorded the Teamsters union de facto recognition. The unexpected announcement of a change of union affiliation in the midst of a bargaining session was made by Air Master employees theretofore accredited and accepted as the agents and spokesmen of the work force. The exhibited and immediately verified authorization cards evidenced the February 5, SIU filed both a representation to the Teamsters. The moving spirits in this switch were not outsiders. No reason appeared to doubt that a change of affiliation had occurred or to believe that it had resulted from any illegal conduct. Indeed, the Board has found in this proceeding that there was not evidence that the employees had been coerced into changing affiliation.[1] Thus, on the present record, uncontradicted evidence incontrovertibly establishes as a fact that beginning February 1 and thereafter the Teamsters union has been the free choice of the Air Master employees as their bargaining representative.
 
 
 11
 The circumstances undoubtedly suggested that this change of affiliation had resulted from a successful coup rather than an open contest between the two unions. But since the employees did in fact without coercion desert SIU, the circumstance that they acted precipitately without notice to SIU headquarters or opportunity for SIU officials to argue against such action, did not make it coercive for the employer to recognize the change of allegiance without giving SIU a chance to win them back. Neither on February 1 nor thereafter has the employer or anyone else had reason to doubt that on January31 almost all of the Air Master employees had rejected SIU and chosen the Teamsters as their bargaining representatives.
 
 
 12
 Only two related circumstances provide even a colorable argument that any substantial question of representation existed after January 31. SIU had been the recognized and accepted union for a number of years and through the January 31 expiration date of its contract. The Board argues that this is sufficient to give the incumbent union 'a substantial claim to representative status', at least when the incumbent promptly indicates that it continues to claim to represent a majority of the employees and serves the employer with a demand for an election before the signing of a contract with a rival union. This contention is of a pattern with the Board's own practice in determining whether a 'question of representation' sufficient to warrant an election exists. In that process, the Board accords an incumbent union preferred status to the extent that it, different from a new claimant, is not required to support its demand for an election with a showing that 30 per cent of the employees support it. National Chemical & Mfg. Co., 1951, 94 NLRB 1190; Acme Brewing Co., 1947, 72 NLRB 1005. But the Board now is going a step further and denying the right of the employer to act upon a correct factual determination that such an incumbent has lost the support of the employees, without awaiting administrative disposition of any demand the incumbent may make for an election. Cf. Novak Logging Co., 1958, 119 NLRB 1573.
 
 
 13
 It is one thing for the Board to be guided by a presumption favorable to an incumbent in making a procedural administrative decision whether it is worthwhile to order an election. But it is another to say that an employer interferes coercively with his employees' choice of a bargaining unioin when he correctly determines, without awaiting an election, that they have chosen a new union to supersede the incumbent. It is interference with the employees' choice, not frustration of the Board's design to hold an election, which the statute proscribes as an unfair labor practice. And the latter is not necessarily determinative of the former. Indeed, a Board conducted election is merely a means for expressing a free choice. If such a choice has in fact been made manifest and the employer honors it, the purpose of an election has been accomplished.
 
 
 14
 If the employer errs in his factual judgment of the situation and recognizes a union that does not in fact have majority support, he will be guilty of an unfair labor practice. International Ladies' Garment Workers v. NLRB, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762. But in so holding, the Supreme Court indicated that a correct factual determination by the employer is an acceptable alternative to Board certification for ascertaining majority status.
 
 
 15
 'If an employer takes reasonable steps to verify union claims * * * he can readily ascertain their validity and obviate a Board election. We fail to see any onerous burden involved in requiring responsible negotiators to be careful, by crosschecking, for example, well-analyzed employer records with union listings or authorization cards.' 366 U.S. at 739-740, 81 S.Ct. at 1608.
 
 
 16
 In this connection it is noteworthy that this court has recently refused to sustain an unfair labor practice finding on a record which showed that an employer recognized a union in circumstances indicating that a majority of the employees voluntarily adhered to that union, despite an outstanding union petition which later resulted in a Board order for an election, since it did not appear that the Board's administrative decision was supported by a showing that the rival union had substantial support. NLRB v. Swift & Co., 1961, 294 F.2d 285. Accord, NLRB v. North Electric Co., 6th Cir. 1961, 296 F.2d 137. Ours is an a fortiori case for rejecting the Board's unfair labor practice finding, unless the bare fact that the rejected union was an incumbent representative is significant. And incumbency in itself is no indication that an asserted change of affiliation is unreal or has been coerced. See, for example, NLRB v. Indianapolis Newspapers, Inc., 7th Cir. 1954, 210 F.2d 501.
 
 
 17
 In brief, our view of the proper scope of the Midwest Piping doctrine is this. For an employer to recognize a union that enjoys only minority support, is an unfair labor practice under the explicit holding of the Supreme Court in the International Ladies' Garment Workers case. Accord, NLRB v. Trosch, 4th Cit. 1963, 321 F.2d 692, cert. denied, 375 U.S. 993, 84 S.Ct. 632, 11 L.Ed.2d 478. To recognize one of two competing unions while the employees' choice between them is demonstrably in doubt, is an unfair labor practice under what the courts have accepted as the normal and proper application of the Midwest Piping doctrine. NLRB v. Signal Oil & Gas Co., 5th Cir. 1962, 303 F.2d 785; St. Louis Independent Packing Co. v. NLRB, 7th Cir. 1961, 291 F.2d 700. And in principle the same result follows when majority support for the recognized union exists, but has been achieved by coercion or some other unfair labor practice. Iowa Beef Packers, Inc. v. NLRB, 8th Cir. 1964, 331 F.2d 176; NLRB v. National Container Corp., 2d Cir. 1954, 211 F.2d 525. But where a clear majority of the employees, without subjection to coercion or other unlawful influence, have made manifest their desire to be represented by a particular union, there is no factual basis for a contention that the employer's action thereafter in recognizing the union or contracting with it is an interference with their freedom of choice. NLRB v. Wheland Co., 6th Cir. 1959, 271 F.2d 122; Cleaver-Brooks Mfg. Corp. v. NLRB, 7th Cir. 1959, 264 F.2d 637, cert. denied, 361 U.S. 817, 80 S.Ct. 58, 4 L.Ed.2d 63; District 50, U.M.W. v. NLRB, 4th Cir. 1956, 234 F.2d 565; NLRB v. Indianapolis Newspapers, Inc., supra; Stewart-Warner Corp. v. NLRB, 4th Cir. 1952, 194 F.2d 207. This case is in this final category.
 
 
 18
 The Board's petition for enforcement of its order will be denied.
 
 
 
 [1]
 Contrast NLRB v. Spiewak, 3d Cir. 1950, 179 F.2d 695, 698, where our brief mention of union recognition, while a dispute over representation persisted, was made in the context of employer assistance to one union before employee sentiment had crystalized