(PRIZE.)

## The Nereid.—Pinto, Claimant.

Under the Prize Act of June 26th, 1812, and the act of the 2d of
August, 1813, allowing a deduction of thirty-three and one third
per centum on " all goods captured from the enemy, and made good
and lawful prize of war, &c., and brought into the United States,"
are not included goods captured and brought in for adjudication,
sold by order of court, and ultimately restored to a neutral claim-
ant as his property ; but such goods are chargeable with the same
rate of duties as goods imported in foreign bottoms.

THIS cause was originally brought into the circuit
court, by appeal from the district court for the south-
ern district of New-York, in which the property,
claimed by Mr. Pinto, had been condemned as prize
of war. The decree of the district court was af-
firmed in the circuit court, September term, 1814;
*pro forma*, for the purpose of taking the cause, by
appeal, before the supreme court, for its final deter-
mination ; which was accordingly done, and the de-
cree of the circuit court reversed, February term,
1815, except as to the undivided fourth part which
Mr. Pinto claimed of certain goods, part of the
cargo, his claim to which was relinquished by his
counsel, on the argument of the cause before the
supreme court. All the other property claimed by
Mr. Pinto, for himself and others, was ordered to
be restored to him. The cause was then remanded
to the circuit court, with directions to carry the de-

1816.

The
Nereid.

cree of the supreme court into effect; and the mandate for that purpose was filed in the circuit court, April term, 1815, and an order made in pursuance of the mandate. It was then stated, and made to appear to the satisfaction of the circuit court, that, after the Nereid and her cargo had been libelled by the captors, as prize of war, in the district court, and after the condemnation thereof, except the parts of the cargo which were claimed by Mr. Pinto, and during the pendency of such claim, Peter H. Schenck, the prize agent of the Governor Tompkins, entered the whole of the cargo of the Nereid at the custom house of the city of New-York, and secured the duties thereon; Mr. Pinto having consented that the goods which he claimed should be entered with the others, and be subject to the payment of such duties as they were by law liable to, without prejudice to his rights under his claim; that the prize agent did enter the goods, so condemned, (as also the said goods of which Mr. Pinto claimed the one fourth,) as prize goods, and bonded therefor for prize duties; but was required by the collector of the customs, and did enter all the residue of the goods, claimed by Mr. Pinto, as neutral property, subject to the full duties payable on goods regularly imported in foreign bottoms, and bonded for the same accordingly. The goods claimed by Mr. Pinto were afterwards, and before condemnation, sold by the marshal of the district, together with the goods condemned, in pursuance of an order of the district court, to which Mr. Pinto also consented, subject to the same reservation of his rights; and the proceeds

of the sales of the goods claimed by Mr. Pinto, after deducting the duties, were paid into court; the amount of the said duties having been paid by the marshal to the prize agent, with the consent of Mr. Pinto, for the prize agent's indemnity. The difference between the duties thus secured to be paid by the prize agent on the goods finally restored to Mr. Pinto, according to the decision of the supreme court, and those which would have been payable on them, as prize goods, under the act of the 2d of August, 1813, entitled, " An act for reducing the duties payable on prize goods captured by the private armed vessels of the United States," amounted to 11,079 dollars and 59 cents. After the mandate and decree of the supreme court, respecting the restitution of the goods claimed by Mr. Pinto, was carried into effect by the circuit court, there remained in the district court the sum of 18,771 dollars and 63 cents, being the amount of the net proceeds of the fourth part of the goods, Mr. Pinto's claim to which had been relinquished.

A motion was made in the circuit court on behalf of Mr. Pinto, that the prize agent should be ordered to pay to him, out of any of the proceeds of the sales of the condemned part of the Nereid and cargo, and which were in, or might come to, his hands, the said sum of 11,079 dollars and 59 cents, the difference between the two rates of duties on the goods finally restored to Mr. Pinto, as before mentioned.

It then appeared to this court that three bonds had been given, by the prize agent, for the duties on those goods which were thus ordered to be restored

to Mr. Pinto; that the two of those bonds which first became due had been paid by the prize agent; but that the last, which became payable on the 9th of February, 1815, and which was for the sum of 8,782 dollars and 97 cents, the collector had suffered, as he said, to remain unpaid until it should be ascertained whether the property, on which said duties were thus secured, was condemned to the captors, or restored to the claimant. That after the mandate of the supreme court was returned to the circuit court, the collector required the prize agent to pay this bond, and he paid the same accordingly on the 7th of April, 1815.

The court were divided in opinion on the point respecting the rates of duties chargeable on the goods so restored to Mr. Pinto; whereupon it was ordered that the said sum of 11,079 dollars 59 cents shall remain subject to the opinion of the supreme court, and that the residue of the 18,771 dollars 65 cents be paid to Mr. Schenck, as the prize agent. And that the point on which the disagreement of the judges of the circuit court took place should be certified to the supreme court for their final decision thereon.

*Hoffman*, for the appellant and claimant. The statutes on this subject are, 1st. The Prize Act of the 26th of June, 1812, s. 14., which repeals the Non-Importation Act, so far as respects goods "captured from the enemy, and made good and lawful prize of war;" and declares that such goods, "when imported and brought into the United States, shall pay the same duties as goods imported

in American vessels in the ordinary course of trade," &c. 2d. The act of the 2d of August, 1813, which provides "that all goods *captured from the enemy*, and made good and lawful prize of war, &c., and brought into the United States, shall be allowed a deduction of thirty-three and one third per centum." 3d. The acts of non-importation, prohibiting the importation of British goods. 1. The goods in question being of British manufacture, could only be imported under the Prize Act, and the act of the 2d of August, 1813. They were captured from the enemy, for they were on board an enemy's vessel; they were *taken* as enemy's property; they were *captured and brought in as good and lawful prize of war*. 2. The character of the goods is determined at the time they were brought in; it is not to be determined by subsequent events : duties are payable on goods on their being first imported or brought in; and the Prize Act puts these goods on the same footing with other importations, and, of course, makes the duties on them payable at the same time. 3. The words " good and lawful prize of war," refer to the time of *capture*, and not of condemnation. By the very act of capture, the goods became prize; and being captured by a lawfully commissioned vessel, were good and lawful prize. The expression " such goods," refers to goods so captured. They are to pay *when* brought in, and not subsequently, upon condemnation. 4. The condemnation does not make the goods prize of war; it merely puts an end to the *jus recuperandi* of the former owner, and gives a new title to the purchaser. The character of prize is,

then, either confirmed by condemnation, or lost by restitution. If the property is restored, it is released from the character it had before borne from the time of capture, and ceases to be prize of war, but being captured and brought in as such, is to pay the prize duties.

*Pinkney*, for the respondents and captors. The question now raised seemed to be settled by the decision in the case of the Concord, at the last term. But, independently of authority, the question is manifestly against the claimant. 1. The goods were not entered under the Prize Act, and the act of the 2d of August, 1813; but as neutral property imported in a foreign bottom, and having been sold, are evidently liable to the full duties on such goods, unless these acts authorize a diminution of them. 2. These acts do not authorize such diminution; the goods were not captured *from the enemy*, and have never been *made good and lawful prize*. They were taken from Mr. Pinto, who was no enemy, either in fact or constructively, according to the judgment of the court. If any thing, then, has made them lawful prize, how has it happened that they have been *restored?* The claimant's counsel, to avoid the appearance of too bold a paradox, mitigates his conclusion on this head in such a way as proves nothing for the purpose of his argument. He ends with saying, that these goods were *captured* and *brought into the United States as* good and lawful prize. He can scarcely, however, have intended to stop here; for if his conclusion goes no farther, it surrenders the

whole argument, unless it can be shown that to seize and bring in as prize that which is not good and lawful prize, and never can become so, makes good and lawful prize of the thing so seized and brought in; or, in other words, that a seizure and bringing in, *as* prize, of neutral property, makes it, *ipso jure*, good prize, although the owner is, nevertheless, entitled to have it again, as *not* being good prize, and has, in fact, got it again accordingly. 3. The character of these goods, with reference to their liability to duty, was not determined at the time they were brought in. If they had been specifically restored, and withdrawn from the United States by the claimant, they would have been liable to no duty. 4. The words " made good and lawful prize," do not refer to the capture merely : the act speaks of the capture first, and then adds, " and made good and lawful prize." The capture, too, must be of *enemy's* goods, either in fact, or in contemplation of law. To say, that the goods are, by the act of capture, made good and lawful prize, because the capture is made by a *lawfully* commissioned cruiser, is to drop more than a moiety of the definition of *good and lawful prize*, or, rather, to insist on that which is not an essential part of its definition. Prize may be made (as a *droit*) by a *non-commissioned* captor; but *good and lawful prize* cannot be made by any captor, unless the goods be liable to condemnation. It is the *formula* of a sentence of condemnation, to condemn the thing taken as " good and lawful prize" to the captors; and this not because it was taken by a lawfully commissioned cruiser, out because, being so taken, it

was under all the circumstances subject to confiscation. 5. Capture gives possession; but it is the condemnation which ascertains that the things taken are good prize of war: until condemnation, it cannot be known whether they are good prize or not. But, certainly, it is self-evident, that after restitution it must be held, that they were *not* good prize. The condemnation does more than destroy the *jus recuperandi*. It establishes what nothing else can establish, that the goods were lawful prize. Restitution, on the other hand, establishes, conclusively, that they *never were* lawful prize, although they might be justifiably seized, upon probable cause, as such.

March 6th.　　MARSHALL, Ch. J., delivered the opinion of the court, that the goods were chargeable with the same rate of duties as goods imported in foreign bottoms, according to the decision in the case of the Concord. at the last term.