RETAIL CLERKS UNION, LOCAL 770, Affiliated with Retail Clerks International Association, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

Los Angeles Joint Executive Board of Hotel & Restaurant Employees & Bartenders Union, AFL–CIO, Intervenor.

No. 20655.

United States Court of Appeals Ninth Circuit.

Dec. 19, 1966.

Kenneth M. Schwartz, Robert M. Dohrmann, of Arnold, Smith & Schwartz, Los Angeles, Cal., for petitioner.

Arnold Ordman, General Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Glen M. Bendixsen, Atty., William J. Avrutis, Atty., N.L.R.B., Washington, D. C., Ralph Kennedy, Director, N.L.R.B., Los Angeles, Cal., for respondent, N.L.R.B.

George E. Bodle, Daniel Fogel, Stephen Reinhardt, Loren R. Rothschild, of Bodle & Fogel, Los Angeles, Cal., for intervenor, L. A. Joint Exec. Board of Hotel & Restaurant Employees and Bartenders Union, AFL–CIO.

Before BARNES and KOELSCH, Circuit Judges, and THOMPSON, District Judge.

THOMPSON, District Judge:

This is a petition for review of a decision and order of the National Labor Relations Board (156 NLRB No. 6) dis-

missing a consolidated complaint filed by the General Counsel pursuant to amended charges filed by Retail Clerks Union, Local 770 [Retail Clerks] against Boy's Markets, Inc., Von's Grocery Company and Food Employers Council, Inc. The Los Angeles Joint Executive Board of Hotel & Restaurant Employees & Bartenders Union, AFL–CIO [Joint Board] is an Intervenor on the petition for review before this Court and was a party below.

The consolidated complaint charged that the employers, Boy's Markets, Inc. and Von's Grocery Company, and their bargaining representative, Food Employers Council, Inc., had engaged in unfair labor practices by rendering unlawful assistance and support to the Joint Board in violation of Section 8(a)(2) of the Act, by interfering and restraining employees in the exercise of rights guaranteed by Section 7 of the Act in violation of Section 8(a)(1) of the Act and by discriminating to discourage membership in the Retail Clerks and encourage membership in the Joint Board in violation of Section 8(a)(3) of the Act.

Petitioner does not attack the findings of fact upon which the Board based its decision. The Specifications of Error,[1] although phrased in part in terms of an attack on factual findings, are in substance protests against the conclusions drawn by the Board from the facts established by the evidence. We, therefore, adopt the facts as found by the Board in its Decision and Order, as follows:

"The Respondents, The Boy's Markets, herein called Boy's and Von's Grocery Co., herein called Von's, are Los Angeles area retail grocery chains, members of the Respondent, Food Employers' Council, herein called the Council, which on behalf of its members had, at all times material herein, a contract with the Retail Clerks Union, Local 770, Retail Clerks International Association, herein called Clerks. This contract ran from January 1, 1959, through March 31, 1964, and covered all retail clerks engaged in 'retail food, bakery, candy and general merchandise' operations. At the time of the execution of this contract, the members of the Council did not have snackbars and thus did not employ any snackbar employees. However, sometime in 1962, when the Clerks noticed snackbars in supermarkets in the Los Angeles area, the Clerks requested the Council to include in forthcoming negotiations for a new multiemployer contract the establishment of wage classifications for all the then unrepresented snackbar employees of its members, and the Council agreed. As more fully set forth in the Trial Examiner's Decision, the negotiations for a new multiemployer contract began in January 1963, and culminated in a new agreement on March 14, 1964.

1. "1. The National Labor Relations Board erred in finding, upon the facts of this case that no real or colorable claim of representation had been presented to the respondents by the Retail Clerks Union.

"2. The National Labor Relations Board exceeded its authority and abused its discretion in finding that petitioner's claim for recognition by the Food Employer's Council was unsupportable in the face of unrebutted evidence to the contrary.

"3. The National Labor Relations Board exceeded its authority and abused its discretion in finding that the Food Employer's Council was not authorized by the Boy's Markets, Inc. and Von's Grocery Company to bargain with petitioner on their behalf, in the face of unrebutted evidence to the contrary.

"4. The National Labor Relations Board exceeded its authority and abused its discretion in holding that petitioner's claim to represent certain employees was a part of another and larger claim of representation involving other, distinct employees.

"5. The National Labor Relations Board exceeded its authority and abused its discretion in failing to apply its doctrine established in Mid-West Piping, 63 N.L.R.B. 1060, to the facts of the instant case."

"On February 1, 1964, while the Council and the Clerks were thus engaged, inter alia, in negotiating wage rates for the unrepresented snackbar employees on a multiemployer basis, the Joint Board, on behalf of affiliated unions representing culinary workers in the Los Angeles area, entered into an exclusive bargaining contract with Boy's covering all snackbar workers of Boy's in four stores in Los Angeles County. On March 2, 1964, the Joint Board entered into a similar contract with Von's covering all snackbar employees of Von's in its four stores in Los Angeles County. These Joint Board contracts were entered into after the Joint Board had organized the snackbar employees of Boy's and Von's, each on a multistore basis, and had established, on the basis of reliable card checks, that the Joint Board represented a majority of the snackbar employees covered by each contract.

"Prior to the execution of the Joint Board contracts, the Clerks had obtained authorization cards from snackbar employees at one of Boy's stores— the Crenshaw store—and, in December, 1963, had asserted a representative claim for snackbar employees of Boy's by virtue of its multiemployer contract and its card showing in the Crenshaw snackbar department. Boy's refused recognition, contending that the snackbar employees at all four of its stores should first be recognized; however, Boy's also had informed the Clerks that Boy's would not enter into a contract with the Joint Board pending conclusion of the Council's current negotiations with the Clerks. Earlier, in November, 1962, the Clerks had also made a demand of Von's that Von's recognize the Clerks as the representative of Von's snackbar employees based on the existing multiemployer contract, but Von's rejected that demand in December 1962."

■ The Board correctly concluded that the doctrine established in Mid-West Piping, 63 N.L.R.B. 1060 (that an employer faced with conflicting claims of two or more rival unions which give rise to a real question concerning representation may not recognize or enter into a contract with one of these unions until its right to be recognized has finally been determined under the special procedures provided by the Act) did not justify a holding here that the employers had rendered unlawful assistance to the Joint Board by contracting with it. The Mid-West Piping doctrine recently received thorough consideration by the Third Circuit in NLRB v. Air Master Corporation, 339 F.2d 553 (3 CCA 1964).[2] There it was held that the mere

2. "In brief, our view of the proper scope of the Midwest Piping doctrine is this. For an employer to recognize a union that enjoys only minority support, is an unfair labor practice under the explicit holding of the Supreme Court in the International Ladies' Garment Workers case. Accord, NLRB v. Trosch, 4th Cir. 1963, 321 F.2d 692, cert. denied, 375 U.S. 993, 84 S.Ct. 632, 11 L.Ed.2d 478. To recognize one of two competing unions while the employees' choice between them is demonstrably in doubt, is an unfair labor practice under what the courts have accepted as the normal and proper application of the Midwest Piping doctrine. NLRB v. Signal Oil & Gas Co., 5th Cir. 1962, 303 F.2d 785; St. Louis Independent Packing Co. v. NLRB, 7th Cir. 1961, 291 F.2d 700. And in principle the same result follows when majority support for the recognized union exists, but has been achieved by coercion or some other unfair labor practice. Iowa Beef Packers, Inc. v. NLRB, 8th Cir. 1964, 331 F.2d 176; NLRB v. National Container Corp., 2d Cir. 1954, 211 F.2d 525. But where a clear majority of the employees, without subjection to coercion or other unlawful influence, have made manifest their desire to be represented by a particular union, there is no factual basis for a contention that the employer's action thereafter in recognizing the union or contracting with it is an interference with their freedom of choice. NLRB v. Wheland Co., 6th Cir. 1959, 271 F.2d 122; Cleaver-Brooks Mfg. Corp. v. NLRB, 7th Cir. 1959, 264 F.2d 637, cert. denied, 361 U.S. 817, 80 S.Ct. 58, 4 L.Ed. 63; District 50, U.M.W. v. NLRB, 4th Cir. 1956, 234 F.2d 565; NLRB v. Indianapolis Newspapers, Inc., supra [7 Cir., 210 F.2d 501]; Stewart-Warner Corp. v. NLRB, 4th Cir. 1952, 194 F.2d 207. This case is in this final category."

fact that the rejected union was the incumbent representative of the employees did not create a real question concerning representation as opposed to a card check demonstrating to the employer that a great majority of the employees had shifted allegiance and had designated preference for the rival union as their bargaining agent. The Court noted: "The circumstances undoubtedly suggested that this change of affiliation had resulted from a successful coup rather than an open contest between the two unions."

The claim of Retail Clerks here is even more tenuous. The "snackbar take-out food employees" were not covered by the Retail Clerks agreement which expired March 31, 1964, and during the 1963 negotiations between the employers and the Retail Clerks, such employees were unorganized and unrepresented. Retail Clerks attempted to organize them from the top by negotiating and concluding a new agreement which in terms covered the "snackbar take-out food employees" without deference to the employees' choice of bargaining representative. The new agreement excepted "persons presently under a collective bargaining agreement with the Culinary Workers Union" (Joint Board). In the meantime, the Joint Board obtained membership application cards from a majority of the "snackbar take-out food employees" in Von's four stores and in Boy's four stores, the authenticity of the cards was independently checked, and the Joint Board entered into collective agreements covering these employees effective February 1, 1964. The bare assertion of representation by the Retail Clerks supported only by the apparent willingness of the employer to negotiate with the Retail Clerks concerning the terms and conditions of employment, excepting employees covered by an agreement with the Culinary Workers (Joint Board) did not give rise to a genuine question concerning representation.[3]

■ The "successful coup" technique alluded to in NLRB v. Air Master Corporation, supra, was employed here. While Retail Clerks negotiated with the employers' representative, the Food Employers Council, Inc., for representation of the unorganized snackbar take-out food employees, the Joint Board did the spade work and obtained evidence of representation and concluded its own agreements with the employers. True, the employers may have been somewhat less than candid in their dealings with the Retail Clerks who, apparently, had no knowledge of the February 1, 1964 Joint Board agreement when they negotiated the agreement providing terms and conditions of employment for such employees excepting persons "presently" under a collective bargaining agreement with the Culinary Workers Union. The rights, nevertheless, to self-organization and to bargain collectively through representatives of their own choosing granted by Section 7 of the Act are the rights of the employees, not of any labor union or the employer, and no labor organization has authority to arrogate unto itself the representation of any unrepresented group of employees without their consent.

The Decision and Order of the National Labor Relations Board are affirmed.

---

3. Retail Clerks' subordinate claim, based on obtaining cards from five employees of Boy's Crenshaw store, supports no genuine claim of representation where all negotiations were conducted on a multi-store basis.